## THE MUNICIPAL ASSESSMENT LIMITATION.

Common Pleas Court of Cuyahoga County.

CITY OF CLEVELAND V. CITY OF CLEVELAND ET AL. *

Decided, March 13, 1907.

*Municipal Corporations—Assessments Which Fall Under the Longworth Act—Grade Crossings, Sewers, Paving—Construction of Sections 2835, 1536-213, 1536-292, 3337-17a et seq, 3337-17g, 2835b, 1536-210 and 2837—General and Superior Object Can Not be Defeated by a Less General and Inferior Direction.*

Such improvements as paving, sewer construction and abolishing of grade crossings within a municipality are improvements within the provisions of Section 2835, Revised Statutes, limiting the authority of council to issue bonds, and where the cost of proposed paving, sewer construction, or abolishing of grade crossings will raise the net indebtedness of the city beyond the 4 per cent. limit, council has no authority to issue bonds therefor without the approval of the electorate.

*N. D. Baker,* City Solicitor, for plaintiff.
*W. B. Sanders,* contra

PHILLIPS, J. (orally).

On December 17 last the council of this city passed an ordinance to issue bonds in the sum of $40,000 to pay the city's portion of the cost of sewering certain streets. At the same time an ordinance was passed to issue $250,000 to pay the city's portion of the cost of paving certain streets. Bids for these bonds, aggregating $290,000, have been accepted and the proper officers are about to sign and deliver these bonds to the purchasers thereof.

This action is brought by the city to enjoin the officers from issuing these bonds, on the alleged ground that the present indebtedness of the city, plus the amount of these bonds, will exceed the 4 per cent. limit fixed by the Longworth act, unless their issuance be first authorized by a vote of the electors of the municipality.

* Affirmed by the Supreme Court upon the reasoning of the Common Pleas and without further report, *Cleveland* v. *Cleveland et al*, 76 Ohio State.

The defendants demur to the petition. The petition sets out the various issues of municipal bonds now outstanding, all of which were issued without submission to a vote of the electors-- the aggregate of which is already slightly in excess of 4 per cent. of the total value of all property in the city, as listed and assessed for taxation.

Not all indebtedness of the city, but only that incurred for certain specified purposes, falls within the said limitation fixed by law. It is conceded by counsel that all the indebtedness enumerated in the petition falls within the limitation, unless it be an issue of bonds to the amount of $1,250,000, issued to pay the city's share of the costs of abolishing grade crossings in the city. If said issue of bonds falls within the operation of the law fixing the limitation, it makes the aggregate of such indebtedness so great that the proposed issue will transcend the limit, if the proposed issue also falls within the operation of the law fixing the limitation. So that, the concrete question under the demurrer to the petition is this:

Does either of these purposes of expenditure—the one for abolishing grade crossings, the other for sewering and paving streets—fall within the operation of the Longworth act? If the former does not, it is immaterial whether the latter does, as the proposed issue of bonds would not then exceed the limitation; but if the former purpose does fall within the operation of said act, the proposed issue of bonds can be justified only if their purpose falls without the operation of said act.

The solution of this question involves the construction of 96 O. L., 40, 53, Sections 53 and 100 (Sections 1536-213 and 1536-292), of Revised Statutes, Section 2835, commonly called the "Longworth act," and of Sections 1 and 7 of an act passed May 2, 1902, entitled "An act to abolish grade crossings in municipal corporations" (95 O. L., 356; Rev. Stat. 3337-17a et seq.), as these several sections may, or may not, be found to stand correlated to the constitutional injunction that municipalities shall be restricted in their power to borrow money and contract debts.

Article XIII, Section 6 of the Constitution, reads as follows:

"The General Assembly shall provide for the organization of cities and incorporated villages, by general laws, and restrict their power of taxation, assessments, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power."

An attentive reading of this section of the Constitution will show that it deals with an existing and inherent power in municipalities to borrow money, to contract debts, and to levy taxes. It does not require, or contemplate, a limitation as to the amount of total indebtedness that may be incurred by a municipality. It contemplates such regulation of an existing power "as to prevent the abuse of such power." The object is, to prevent an abuse of power, and this is to be done by restricting the power. The nature and extent of the restriction are matters left to the Legislature.

The restriction claimed to be operative as to the proposed issue of bonds is imposed by Section 2835, Revised Statutes, as amended April 29, 1902 (95 O. L., 318), which amendment is known as the Longworth act. The material parts of Section 2835, Revised Statutes, found in the Longworth act, are these:

"That the trustees of any township, or the council of any municipal corporation of the state of Ohio, shall have the power to issue and sell bonds in such amounts and denominations, for such period of time and at such rate of interest, not exceeding 6 per cent., and in such manner as is provided by law for the sale of bonds by such township or municipal corporation, for any of the purposes provided for in this act, whenever such trustees or council by affirmative vote of not less than two-thirds of the members elected or appointed thereto shall by resolution or ordinance deem the same necessary."

Then follow twenty-seven subdivisions, comprising the purposes for which this power may be exercised. No. 14 of this subdivision is in these words:

"For constructing sewers, sewage disposal works, flushing tunnels, drains and ditches."

Section 22 says:

"For resurfacing, repairing, or improving any existing street or streets, as well as other public highways."

Following this enumeration of purposes, and coming within the operation of the section, it says:

"The bonds herein authorized may be issued for any or all purposes enumerated herein, but the total bonded indebtedness hereafter created in any one fiscal year under the authority of this act by any township or municipal corporation shall not exceed 1 per cent. of the total value of all property in such township or municipal corporation, as listed and assessed for taxation, except as otherwise provided in this act."

Further on in the section it says:

"Provided, however, that the net indebtedness incurred by any township or municipal corporation after the passage of Section 2835, Revised Statutes, as amended April 29, 1902, for the purposes herein enumerated, shall never exceed 4 per cent. of the total value of all the property in such township or municipal corporation, as listed and assessed for taxation, unless an excess of such amount is authorized by vote of the qualified electors of such township or municipal corporation in the manner hereafter provided in Section 2837, Revised Statutes."

It is conceded in argument, and I think it clearly appears, that this section embraces in subdivisions 14 and 22 the purposes of the proposed issue of bonds, bonds for sewering streets and bonds for paving.

At the extraordinary session of the Legislature held in the autumn of 1902, by an act passed October 22, 1902 (96 O. L., 20), the General Assembly established a code for the organization and government of all municipalities in Ohio. This act took effect on the first Monday of May, 1903.

Act 96 O. L., 53, Section 100 of this municipal code, is as follows:

"All municipal corporations shall have power to issue bonds for the various purposes, to the amounts and with the limitations provided in the act passed April 29, 1902, entitled, * * * and such act shall be and remain in full force and effect."

This section of the municipal code makes clear the legislative intent that the Longworth act, or Section 2835, Revised Statutes, of the statutes, with its limited limitations, should apply to the borrowing of money by municipalities for any and all purposes

enumerated in Section 2835, Revised Statutes, including, as we have seen, the purposes of the proposed issue of bonds.

Nothing dubious or ambiguous, nothing calling for construction, has yet been encountered; the difficulty so far as the proposed issue of bonds is concerned, arises from the provisions of 96 O L., 40, Section 53. Act 96 O. L., 39, Section 50 (Revised Statutes 1536-210), says:

"The council of any municipal corporation may assess upon the abutting, adjacent and contiguous or other specially benefited lots or lands in the corporation, any part of the entire cost of, and expense connected with, the improvement of any street, alley or public road or place by the paving, repaving, constructing sidewalks, sewers, drains or water-courses, and any part of the cost of lighting, sprinkling, cleaning or planting shade trees upon the same, by either of the following methods."

This Section 53 (96 O. L., 40) says that:

"In all cases of assessments the council shall limit the same to the special benefits conferred upon the property assessed, and in no case shall there be levied upon any lot or parcel of land in the corporation any assessment or assessments for any or all purposes, within a period of five years, exceeding thirty-three and one-third per cent. of the tax value thereof."

Then:

"In all municipalities the corporation shall pay such part of the cost and expense of improvements for which special assessments are levied as council may deem just, which part shall not be less than one-fiftieth of all such cost and expenses; and in addition thereto, the corporation shall pay the cost of intersections."

And it is for paying these parts of the expenses on the part of the municipality that some of the bonds are proposed to be issued. Then the section finally says:

"Provided, that any city or village is hereby authorized to issue and sell its bonds as other bonds are sold to pay the corporation's part of any improvements as aforesaid, and may levy taxes in addition to all other taxes authorized by law to pay such bonds and the interest thereon."

Act 96 O. L., 40, Section 53, with its contextural Section 50, clearly embraces the purposes of the proposed issue of bonds,

and there is in this section itself no limitation as to the amount of indebtedness that may be incurred under the section. But it has been seen that 96 O. L., 53, Section 100, just as clearly embraces the proposed issue of bonds with a limitation as to the amount.

Both of these, Sections 53 and 100 (96 O. L., 40, 53), relate to expenditures that are authorized and legal. These expenditures may lawfully be provided for by taxation, and they may be provided for by the borrowing of money. Taking these sections each by itself, the meaning of each is obvious. When money is borrowed under favor of 96 O. L., 40, Section 53, it is clear there is no limitation therein as to the amount; and when borrowed under favor of Section 100, it is equally clear that the amount can not transcend the 4 per cent. limitation, unless authorized by vote of the electors.

Here arises necessity for construction, and we must go perhaps beyond the literal meaning, the absolute sense of the text, and taking these apparently discordant elements, determine their meaning as a whole. We are here confronted with a problem of real difficulty, and it is as important in its consequences as it is difficult of solution.

The decision of the Supreme Court, in the case of *Heffner* v. *Toledo*, 75 Ohio St., relates mainly to procedure, and is not very helpful in this case. In that case, the city of Toledo had provided by ordinance for the issuance of bonds to provide a fund from which to pay the city's part of the cost of grading, paving and sewering a great number of streets, without having first passed an ordinance providing for the particular street improvements.

It was held that bonds for such purpose might be issued under Section 53 of code, or under the Longworth act, Section 100 of the code. That if issued under 96 O. L., 40, Section 53, an ordinance providing for the specific improvements must first be passed, but that such ordinance is not a prerequisite to the issuance of such bonds under the Longworth act. That is the question upon which that case turned—the only question they had to determine. There were some subordinate questions, but

that was the main question for determination, in order to decide the case.

In considering this decision of the Supreme Court, we must advert to the fact that the Longworth act, so-called, was only an amendment of Section 2835, Revised Statues. This section as it stood at the time of said amendment, conferred power upon municipal corporations to issue bonds in such amount as may be deemed necessary for some twenty or more different purposes therein specified, when sanctioned by two-thirds of the electors voting at an election to be held for that purpose. And they could be issued only when so sanctioned. The amendment added a great many more purposes, and provided that within a fixed limitation, bonds for all purposes enumerated might issue without submission to a vote of the electors.

Recurring now to the case of *Heffner* v. *Toledo, supra,* Judge Summers, delivering the opinion, says, page 430:

"The substance of Sections 2273 and 2274, Revised Statutes, providing that the city should pay for the intersections and not less than one-fiftieth of the cost of the improvement, was embraced in Section 53 of the municipal code of 1902; and this provision was added: 'Provided, that any city or village is hereby authorized to issue and sell its bonds as other bonds are sold to pay the corporation's part of any improvement as aforesaid; and may levy taxes in addition to all other taxes authorized by law to pay such bonds and the interest thereon.' If this was only authority to issue bonds for this purpose, it might be, that there was power only to meet the city's part of the cost by issuing bonds instead of by a levy, and as the latter could not be made until an ordinance to proceed with the improvement had been passed, that counsel's contention is sound that that is a prerequisite to the issuing of the bonds. But, as has been shown, the authority already existed in the Longworth law, and the provision in Section 53 is not to be construed as limiting the powers conferred by the Longworth law, but as a grant of additional power. Attention to the provisions of the Longworth law, as well as to the provisions of the sections that it amended, will disclose that, as there conferred, the power was not limited to the issuing of bonds to pay the city's part of the cost of improvements that had been provided for by ordinance, but might be exercised when they were merely contemplated."

The only cognate principle here announced by the Supreme Court is, that the authority conferred by Section 2835, Revised Statutes, already existed when that conferred by the new part of 96 O. L., 40, Section 53, was given, and that Section 53 is not to be construed as limiting the powers conferred by Section 2835, Revised Statutes.

By parity of reasoning, which it seems to me is warranted, the limitation imposed by Section 2835, Revised Statutes, is not to be removed by the new and subsequent provision of 96 O. L., 40, Section 53, which is really a duplication of the authority of Section 2835, Revised Statutes.

Well in line with this principle announced in *Heffner* v. *Toledo, supra,* is a rule of construction long ago announced in the case of *State* v. *Perrysburg,* 14 Ohio St., 472, and not referred to in *Heffner* v. *Toledo, supra.* I read the fifth paragraph of the syllabus in that case:

"It is an established rule in the construction of statutes, that a subsequent statute, treating a subject in general terms, and not expressly contradicting the provisions of a prior act, shall not be considered as intended to affect more particular and positive provision of the prior act, unless it be absolutely necessary to do so, in order to give its words any meaning."

We must bear in mind that 96 O. L., 40, 53, Sections 53 and 100, the latter adopting and incorporating Section 2835, Revised Statutes, are part of one and the same text or enactment of the municipal code. All the cognate parts of this enactment must be construed together, and all its provisions must be harmonious with the substance and general spirit of the entire enactment, and the general spirit of an enactment is to be found not in its subordinate and inferior purposes, but in its superior and pervading objects. The general purpose and spirit of an enactment can generally be found in its title, and the title to the municipal code reads:

"An act to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and lending their credit, so as to prevent the abuse of such powers, as required by the Constitution of Ohio, and to repeal all sections of the Reviesd Statutes inconsistent herewith."

It looks as though that was the prevailing motive of the Legislature in enacting this code. At any rate, the Legislature must have had that subject well in mind in its enactment, and no construction ought to be placed upon any parts of the code that would do violence to this apparent prevailing purpose of the Legislature, if it can be avoided.

In Lieber, Hermeneutics, a rare book, and as valuable as it is rare, on page 135, Dr. Lieber lays down this rule of construction:

"The general and superior object can not be defeated by a less general and inferior direction; and in general the higher prevails over the lower, the principle over a specific direction."

Now, 96 O. L., 40, Section 53, provides for raising money for a single purpose, whereas Section 2835, Revised Statutes, provides for some fifty or sixty different purposes. Dr. Lieber gives this illustration, not very apt here, but it illustrates the principle that he stated in the rule that I have read. He says:

"Pufendorf gives, in illustrating another rule, however, the instance that there exists a law that no citizen shall carry arms on festivals; another to assemble with arms, as soon as the alarm bell is sounded. A hostile fleet appears on Sunday off the harbor; the bells are rung; What has the citizen to do? He has to go armed, of course, because the first-mentioned law was given to maintain peace and safety; the second to save the city. The repelling of the enemy and the freedom of the city is the most important. It does not appear to me that the citizens ought to go armed on Sunday, 'because the second law forms an exception to the first'; in this case, if it does, it is only because the exception is founded upon a more general principle; if it were not, it could not possibly have the power of overcoming the other law, which prohibits going armed on festival days."

In *Smith* v. *Rockford*, 4 N. P.—N. S., 513, decided in November, 1906, and prior to the decision of the Supreme Court which I have read, Judge Mathers in a fairly well-reasoned opinion says this (and he had the same question presented here, excepting that it related to the limitation of 1 per cent. on the issue of bonds within the same fiscal year, instead of the limitation of 4 per cent. which is involved here):

"The code ought to be consdered as a whole. The two sections involved, 53 and 100, are each contained in the code as it

was adopted in the act of October 22, 1902 (96 O. L., 20), and they remain as integral parts of it. Their provisions must have been within the legislative contemplation when the act was adopted. It is true the Longworth bond act is a piece of antecedent legislation, but Section 100, passed at the same time as Section 53, does not merely provide it 'shall be and remain in full force and effect,' but contains a renewal of the legislative intent that municipal corporations, when they issue bonds for purposes mentioned in the act shall be governed by its limitations. It is true the terms of the act are permissive as to the issue of bonds, but it is difficult to imagine how they could be anything else, for the Legislature did not intend to direct council to issue bonds for the purposes mentioned.

"The present Constitution of Ohio requires the General Assembly, by Section 6 of Article XIII, to restrict municipal corporations in their powers of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such powers. One of the purposes of the Legislature, in enacting the act of October 22, 1902, commonly called the municipal code, was to carry out the constitutional requirement. It so declared itself in the preamble to that act. Where one of two constructions of a section or sections of the code will effect this declared purpose, and the other will not, the former will be adopted."

I think some significance attaches to the provisions of Section 2835b, Revised Statutes, which is a part of the Longworth act, and Judge Mathers, in the opinion that I have been reading from, gives that section consideration, and I believe Judge Cunningham, who decided the preliminary motion in that case, 4 N. P.—N. S., 476, based his decision entirely on that—on the effect that he thought this Section 2835b should have. This case is familiar to counsel, and I will not take the time to read it, as I had intended.

I am clearly of the opinion that the proposed issue of bonds falls within the provisions of 96 O. L., 53, Section 100, and their issue should be enjoined unless the former issue for grade crossing elimination falls without the operation of said section, and so makes room for the proposed issue without a vote of the electorate.

This brings us to inquire whether the issue of $1,250,000 of bonds for paying the city's share of the cost of abolishing grade

crossings, falls within the operation of Section 2835, Revised Statutes, and is to be included in computing the net indebtedness under said section. What has already been said and decided prepares the way for a very short disposal of this question.

The specific authority and power of a municipality to abolish grade crossings is conferred by an act passed May 2, 1902. (95 O. L., 356). Sections 1 and 7 of this act are perhaps all that are material to the question under consideration. Section 1 (Revised Statutes, 3337-17a) says:

"Any municipal corporation may raise or lower, or cause to be raised or lowered, the grade of any street or way above or below any railroad tracks therein, and may require any railroad company operating a railroad in such municipality to raise or lower the grade of its tracks and may construct ways or crossings above the tracks of any railroad, or require the railroad company to construct ways or crossings that are to be passed under its tracks, whenever, in the opinion of the council, board of legislation, or other legislative body, the raising or lowering of the grade of any such railroad tracks, or the raising or lowering or construction of such ways or crossing may be necessary, upon the terms and conditions hereinafter set forth in this act."

The intervening sections make provisions for determining what is to be done and how it is to be done, and perhaps the cost of it, and so on. Then Section 7 (Revised Statutes, 3337-17g) provides:

"For the purpose of raising the money to pay the proportion of the cost of such improvement payable by the municipality," which I believe is fixed at one-half of the entire cost, "the bonds of the municipality may be issued to the necessary amount, which bonds shall be of such denomination and payable at such place and times as the council, board of legislation or other legislative body may determine, and shall bear interest not exceeding 4 per cent. per annum, and shall not be sold for less than their par value. A tax on the taxable property of the municipality in addition to all other levies now allowed by law may be levied to pay the principal and interest of the bonds as the same may mature."

It provides for a levy to raise money to make repairs. Does the language in Section 2835, Revised Statutes, fairly embrace what is provided for in the act for abolishing grade cross-

ings? The act for abolishing grade crossings contemplates the procurement of land, which is necessary to make approaches to it and over the crossings.

Subdivision 22 of Section 2835, Revised Statutes, in the enumeration of purposes which will come within the operation of this section, says:

"For resurfacing, repairing, or improving any existing street or streets as well as other public highways."

Subdivision 1 says:

"For procuring the real estate and right of way for any improvement authorized by this section, or for purchasing real estate with a building or buildings thereon, to be used for public purposes."

I think these two subdivisions I have read embrace the elimination of grade crossings, for that is certainly an improvement of the streets.

Subdivision 22 says:

"For improving any existing street or streets."

In the act providing for it, the abolishing of grade crossings is uniformly referred to as a street improvement. The word "improvement" being used twenty-two times in five sections of the act. I do not know that that has much significance. It is the nature of the work that determines it, not the use of terms.

Certainly the elimination of grade crossings in the streets of a municipality is an improvement of the municipal highway. It would not be authorized if it were not—I suppose it could not be authorized if it were not.

It is true that the power to eliminate grade crossings, and the limitation upon the incurring of indebtedness are found in separate enactments, but the statute limiting the authority to borrow money, was enacted first, and was in existence when the other act was passed.

The embodiment of Section 2835, Revised Statutes, in the municipal code, did not eliminate it from the general statute, but left it standing and operative as an integral part of the Revised Statutes of the state.

As said by Judge Mathers, in the case already quoted from,

we must not confuse the power conferred to make an improvement, with the power conferred to adopt the means to pay for the improvement.

Section 2835, Revised Statutes, is generic and general in that it empowers the city within a fixed limitation, to borrow money for about sixty different purposes. The act empowering the city to abolish grade crossings is specific in that it empowers the city to do one of the things embraced in the generic terms of Section 2835, Revised Statutes. The specific is embraced in the generic, and is subject to its provisions and limitations, since the two are not inconsistent, and the specific does not stand as an exception to the general, as I have heretofore pointed out.

I find that the outstanding issue of bonds in the sum of $1,-250,000 is within the operation of the Longworth act, and must be included in computing the net indebtedness of the city under that act. I find that the proposed issue of $290,000 is likewise within the operation of said act, and since it is conceded that such inclusion of said outstanding issue brings the net indebtedness of the city up to the limit of 4 per cent. it follows that the proposed issue can not be legally made unless first authorized by a vote of the electorate of the city.

The demurrer to the petition is, for these reasons, overruled.