## KLIPSTINE LUMBER & SUPPLY CO v STOCKSTILL

Ohio Appeals, 2nd Dist, Shelby Co

No 109. Decided Nov 13, 1936

R. E. Boller, Jr., Sidney, and Taylor Cummins, Sidney, for appellant.

H. H. Needles, Sidney, for appellee.

## OPINION

By HORNBECK, J.

Error is prosecuted from a judgment of the Court of Common Pleas in favor of Herbert Stockstill, now deceased, and against the appellant, who was the plaintiff below. There are nine assignments of error, all of which are asserted and argued in the briefs of counsel for the plaintiff.

The action originated in a suit on an account for a balance due in the sum of $59.59, instituted by the plaintiff in a Justice of the Peace Court. The defendant at all times until the judgment in his favor in the Common Pleas Court was Herbert Stockstill, who thereafter died and the action has proceeded by the substitution of Mary Stockstill, administratrix. We shall refer to Herbert Stockstill as the defendant and to Mary Stockstill as the administratrix.

In the justice's court the defendant filed a cross bill of particulars, in which he claimed a balance due in the sum of $409.39. However, defendant did not appear and judgment by default was entered for the plaintiff in the sum prayed for, namely, $59.59, with costs and interest and the cross bill of particulars was dismissed. Notice of appeal to the Common Pleas Court was then given by the defendant. The plaintiff duly filed his petition in Common Pleas Court, to which the defendant interposed his cross petition, in which he prayed for judgment in the sum of $409.39. On motion this cross petition was stricken from the files upon the theory that there had been no final order in the Justice of the Peace Court on the cross bill of particulars and because the amount prayed for was in excess of the jurisdictional limits of the Justice of the Peace Court. The Common Pleas Court, however, permitted the defendant to amend his cross petition and refile it, limiting the amount prayed for to a sum within the jurisdiction of the Justice Court and the cross petition was refiled, seeking judgment in the sum of $299.99.

There was no reply filed to the amended cross petition but the cause went to trial on the issues drawn and was submitted as upon denial by the plaintiff of the cross petition of the defendant, resulting in a verdict for the defendant on the cross petition in the sum of $210.00, which, on motion for new trial, was reduced by the sum of $70.06 and judgment was entered on the verdict in the sum of $139.94.

We shall set forth the various assignments of error as we discuss them, not necessarily following the chronological order in which they appear in the assignments of error and briefs:

ONE: The court erred in its disposition of appellant's motion to strike from the files the second cross petition of the defendant in the Common Pleas Court.

It is urged by counsel for the plaintiff that the trial court was inconsistent in that it sustained the motion of the defendant to strike the first cross petition because there had been no final order on the cross bill of particulars in the Justice Court and then permitted a new cross petition to be filed, changing only the amount for which judgment was prayed. We are of the opinion that the trial court's conclusion of the matter was correct, although the basis of such determination may have been in part faulty. The whole matter, in

our judgment, is controlled by the simple and specific terms of the statute touching appeals from the Justice of the Peace Court to the Court of Common Pleas, namely, §10387 GC:

"When an appeal is taken from a judgment of a Justice of the Peace, to the Court of Common Pleas, the plaintiff below shall be plaintiff above; **and in all respects, the parties must proceed as if the action originally had been commenced in that court.**" (Emphasis ours).

If the action is to proceed in Common Pleas Court in all respects as if it had originally been commenced there, then the fact that the defendant filed a cross bill of particulars in the Justice Court and did nothing whatever to follow up the action so taken would not preclude him from setting up a cross petition in all particulars like the cross bill of particulars. The whole matter in the Common Pleas Court, so long as the cause of action of the plaintiff is the same as in the Justice ▮▮▮▮▮▮ of the Peace Court, is to be considered and determined as though there had been no action whatever in the Justice of the Peace Court. **2 O. Jur., pages 38 and 370, and cases cited.** The right, then, of the defendant to cross petition was preserved as definitely and as completely as it would have been had the action in the first instance ▮▮▮▮▮▮ stance been instituted in the Common Pleas Court. The appeal was directed to the judgment in behalf of the plaintiff below and thereby placed the case in the Common Pleas Court as though originating there.

Counsel for plaintiff cite **The Alliance Monumental Company v Wells, Administrator, etc., 18 O.C.C. (N.S.) 127,** which is authority only for the proposition that on appeal a new and different cause of action can not be stated.

In **Wherry v Frolick, 22 O.C.C. (N.S.) 409,** determines that on appeal from a Justice of the Peace Court a cross petition which prays for an amount in excess of the amount over which the justice would have had jurisdiction should be stricken from the files, as was done in this case.

**Strauss v Jacobs, 7 O.N.P. 258,** holds that appeal does not lie from an action of the Justice of the Peace dismissing the cause of action without prejudice. Supporting the law as announced in this case, **Farrell v Bluffton Lodge, 30 Oh St 463,** is cited, where in the second proposition of the syl-

labus announces the principle followed in the Strauss case, although the case which the Supreme Court considered was on error from the Justice of the Peace Court and not on appeal.

The effect of these decisions as they apply to our facts would be to prevent the defendant prosecuting his appeal if the only order made in the Justice Court related to his cross bill of particulars in that court. The judgment from which the appeal is properly prosecuted is the judgment on behalf of the plaintiff.

It is probable, though it is not necessary to so hold, that all of the evidence which was offered relating to the amount due on the Beck roof would have been competent under a general denial. It is apparent on the record that there was no express contract, by the terms of which the roof was to be laid for any fixed sum. The contract was express in so far as the employment by the plaintiff of the defendant was concerned, but the amount of the compensation to be made therefor rested on an implied contract. When the plaintiff credited the defendant with $84.00 for laying the roof, this was done upon the judgment of the plaintiff that this was fair compensation therefor. This, however, did not settle the question and it was a subject of issue whether or not the amount so credited was a sum which represented what the services were reasonably worth.

TWO: The court erred in compelling the appellant to open and close the presentation of the case.

It is urged that the answer of the defendant admitted the amount claimed to be due by the plaintiff in its petition and set up a cross claim and that had no evidence been introduced by either party the plaintiff would have been entitled to verdict and judgment on its petition, and that therefore the duty of going forward devolved upon the defendant.

It is true that a fair consideration of the answer and cross petition supports the contention that there was no dispute, as to so much of the account as was set up in the petition, but the answer and cross petition asserted that the items set up in the petition were incomplete and that a full and correct statement thereof showed a balance due the defendant. The evidence disclosed that the method of doing business between the parties was such that all of the transactions were properly the subject matter of one account between them. Therefore, the answer and cross petition of defendant did not constitute an admis-

sion of anything due plaintiff upon the account sued upon. However, without respect to this construction of the pleadings, the defendant could not now be heard to urge that the action of the trial court in requiring it to go forward was prejudicially erroneous, because when the matter was called to the attention of the court, although the defendant suggested its right as a matter of law, it did not urge it, nor stand upon it and noted no exception to the action of the trial court.

FIVE: The court erred in permitting testimony offered by defendant over appellant's objection.

The principal issue between the parties arose upon one item of the cross petition, wherein defendant undertook to support a charge against the plaintiff in the sum of $243.21 for roofing what was known as the Beck house. The defendant was a tinner and roofer, who from time to time throughout several years had taken contracts for complete jobs of roofing from the plaintiff. The Beck house was roofed with what was known as Johns Manville English design slate shingles, made of an asbestos preparation. They were in shingle form of three different colors and had to be placed upon the roof in color combination. In a general way they were laid as wooden shingles would be placed, except that there was more cutting and shaping of the asbestos shingles than would ordinarily be required on a shingle roof. This requirement, however, was caused more by reason of the peculiar shape of the roof of the Beck house than because of the material or type of the shingles.

It was the theory of the defendant that there had been no estimate made or agreed upon between the parties touching the cost of the laying of these shingles on the Beck house and the charge made therefor by the defendant was upon an hourly basis. Supporting the fairness of this charge a number of local carpenters were called, some of whom had been contractors, others working carpenters and roofers. They were permitted, after statement of the size of the roof, the general conformation thereof and the type of shingles to be laid, to express an opinion of a fair charge per hour for the labor necessary to lay the roof. To the admission of this testimony objection was interposed and it is here urged that the information sought was in the field of expert knowledge; that some of these witnesses did not qualify as experts; that the court erred in permitting them to testify, thereby prejudicing the cause of the defendant. We are satisfied that the witnesses in each and all instances were qualified to express opinions upon the subject matter of their interrogation. It appears that any one of them had sufficient general knowledge of the kind and extent of services required to lay the type of roofing which was placed upon the Beck house and to estimate what would be a fair hourly charge for that kind of employment. The jury was given sufficient insight into the qualifications of the witnesses to properly weigh the value of the testimony which they gave.

SEVEN: The court erred in charging the jury, and,

EIGHT, in refusing to charge the jury as required by appellant. The court said at the bottom of page 171:

"By preponderance of the evidence is meant simply the greater weight of the evidence."

It is urged that this is incomplete and should have been elaborated. The definition is correct and therefore there is no error of commission which would be reached by a general exception to the charge. No other error is specified touching the general charge.

The other assignments may properly be considered under one classification. They are:

"3. The verdict of the jury is not sustained by the weight of the evidence and the law.

"4. The amount found due by the jury is excessive.

"6. The court erred in refusing to direct a verdict as requested by appellant.

"9. The court erred in its computation of a remittitur to appellant."

Although there was some confusion raised by the issues drawn on the pleadings at the inception of the trial, these issues were changed considerably as the trial progressed and eventually all disputes between the parties could be grouped under four items of charges made by the defendant against the plaintiff, viz., one for $10.00 for one thousand galvanized shingles claimed to have been sold by the defendant to the plaintiff, upon which delivery was made; two, labor on an elevator roof at the Wagner Manufacturing Company in

the sum of $11.52; three, Keplinger roofing, $18.00, and four, labor on the Beck roof in the sum of $243.21.

No interrogatories were submitted to the jury, so that we do not have the benefit of determination of the items that made up the verdict returned. We must, then, assume that allowance was made for such items as could properly have been charged against the plaintiff on the cross petition of the defendant. This would permit a finding in behalf of the defendant of $10.00 for the iron shingles and $11.52 for the Wagner roof.

Another charge to be considered is the $18.00 for the Keplinger roof. Mr. Pointner, for the plaintiff, admitted that the $18.00 representative of the charge made by the defendant for the Keplinger roofing had been paid to the plaintiff but asserted that it was held to protect the company against demands for repairs on two and possibly three other roofs that plaintiff had laid. The right to hold this amount might have been established under the theory of a general denial of the cross petition, but the proof does not go far enough. There was no showing of any specific amount of money which would be required to be expended by plaintiff to make good any roof which the plaintiff had put on. There is then no measure which the jury or the trial court could have applied to determine whether all or any part of the $18.00 could properly have been withheld by the plaintiff. This sum must be allowed the defendant.

The other item which must have gone to make up the verdict for the defendant was an allowance for laying the Beck roof. The defendant's cross petition was predicated upon an account, most of which did not reach the jury for consideration because of the development of the evidence. As shown by the account set up in the cross petition, the charge for the Beck roofing, labor, etc., of date, December 15, 1935, was $243.21. This being based upon a book account, it was proper for the defendant to establish it by introduction of the account of original entries.

We have examined the testimony of the defendant and his wife, who kept his books, and defendant's Exhibit F, which purports to be an original statement of the labor on the Beck roof, and are utterly confounded. There was another form of account to which the witnesses referred than defendant's Exhibit F, but it does not appear in the record. Defendant's Exhibit F is utterly unintelligible and on its face is not correct, nor does it conform to the testimony of the defendant nor his wife. The sum total of the charges thereon found, insofar as we can compute it from the figures, is $285.28. The charges thereon appearing are in instances 65c for the defendant, 55c for his helper Fred, and 45c for his helper Chet, though he testified that the charge to be made was 60c, 40c and 35c an hour, while Mrs. Stockstill testifies that the original charge was 65c, 60c and 45c and afterwards cut down to 60c, 40c and 35c. In the exhibit many entries are totalled on the basis of 65c, 55c and 45c per hour. Others are undertaken to be totalled, but the basis of computation is uncertain.

There are many and marked discrepancies in the entries as to dates and hours of labor. We can not undertake to direct attention to all of them. A few follow: Defendant says that the helpers worked 8½ hours on the 26th of September. The entry shows originally charges for nine hours a day for the helpers, which afterwards was stricken out by a pencil line through the charges. His testimony is that on September 30th, both helpers worked 4½ hours, whereas the account shows a charge for one helper 4½ hours, totalling, however, $2.75, which represents five hours. There is an insertion in the account of eight hours labor for defendant and both helpers which is not totalled and is not testified by the defendant. On October 15th it is testified that the defendant and both helpers worked, although the charges are for the helpers only. October 16th shows a charge for the defendant, although he states that he did not work. For October 17th the statement is made that the helpers worked 4½ hours, although the charge is for four hours. On October 22nd the charge for eight hours of help at 35c is 20c less than the same charge for the same time at 45c per hour. Charges are made for work on Sunday, which in all probability was not done on that day. This statement is utterly ineffective as a true account of the hours of labor on the Beck roof.

The only basis, then, left for any intelligible appraisal of the value of the labor performed on the Beck roof is by the square. It is undenied that there were 28 squares in the roof covered. The type of roof and the work that was required to be done to complete the job appears largely from the defendant's testimony. From that

we must determine that it was a very difficult roof upon which to work. The shingles laid were of three different colors and had to be put on in the proper relation to each other. This was not especially complicated, but was tedious, and, of course, took much more time than would have been required to prepare and lay shingles of but one color. The roof on the main part of the residence was half pitch and steep and had to be bracketed before the shingles were laid. It appears that the roof was first covered with paper and there is some testimony that considerable sheeting had to be laid preparatory to placing the shingles. There were a number of dormers on the roof to fit, for which the shingles had to be especially cut. The coping, likewise, had to be laid with shingles. There was a cupola on the building, which was sheer and which had to be scaffolded to work upon. The only evidence in the record fixing the area of this roof was a statement of the defendant that it was about two squares. It is safe to say that this job was worth considerably more than similar services on an ordinary roof. However, a proper estimate of the time required to shingle the whole roof should have resulted in substantially the same sum as an estimate by the square.

Mr. Pointner, manager of plaintiff company, said that $3.00 would be a fair price per square for the roofing. Two other witnesses on behalf of the plaintiff testified to the same effect, although one of them said that the charges by the hour, which the defendant indicated as the basis of his account, were reasonable.

The witnesses for the defendant supported the charge of defendant by the hour and one of them said that $5.50 per square would be fair for the work on the Beck roof; another said that not less than $6.50 per square. The charge which the defendant set up in his cross petition amounted to $8.69 per square. We are satisfied that this is too high and it is probable that neither the jury nor the trial court was of opinion that they were making an allowance to the defendant on this basis.

We come, then, to determine what the judgment in this case represents in the way of an allowance to the defendant on his cross petition. We undertake to state the accounts in this manner: Amount stated, to be due the account plaintiff in its petition, $59.59, to which should be added $84.00 arbitrarily credited to Stockstill. This makes a total amount of plaintiff's account against the defendant of

$143.59. The claim of the defendant is $10.00 for shingles, $11.52 for the Wagner roof, $18.00 for the Keplinger roof and $243.21 for the Beck roof. This totals $282.73. The balance then due the defendant on the respective claims would be $139.14. The judgment allowed the defendant is $139.94.

Upon the basis of an allowance of $6.50 per square for the 28 squares of roofing the sum total would be $182.00, which to us seems to be the highest amount which could reasonably be allowed under a fair consideration of the favor-  able probative evidence of the defendant. To this, of course, should be added $39.52, representative of the other three items which should be allowed to the defendant. This makes a total of $221.52. This will reduce the judgment on behalf of the defendant to $77.93.

If the defendant will enter a remittitur of all over this sum the judgment will be affirmed in the sum of $77.93 with interest and costs. Otherwise, a new trial will be granted.

BARNES, PJ, and BODEY, J, concur.